## Commonwealth ex rel. De Santis v. De Santis

*Bernard Goldstone,* for petitioner.

*William Kuhn,* for defendant.

STRANAHAN, P. J., October 14, 1971.—This matter is before the court on a petition by the mother, Elsie Jane De Santis, asking this court to enter an order against defendant, Frank De Santis, which would require him to contribute money for the college education of his daughter, Karen. Karen was born February 8, 1953, and has now attained the age of 18 years and has graduated from high school.

On June 24, 1971, the court entered an order terminating the father's requirement to support his daughter.

On October 5, 1971, a hearing was held, at which time testimony was offered by the daughter to the effect that she had graduated from Farrell High School in June, 1971, and had made application for admission to Ottowa College, a school of some

300 students, located in the state of Iowa. She indicated that she could commence her studies at that college in November, since college operated on a seven-week period, whereby a student could enter at any seven-week interval. Her testimony further indicated that costs per year for room, board and tuition would approximate $3900 and that in addition to that there would be further expenses, including the cost of transporting her and her furnishings to Iowa and back. She further indicated that she would like to major in psychology and that Ottowa College was an accredited school with a strong psychology department.

In discussing her ability to finance her college education, she indicated that she could receive a scholarship through the Baptist church in the amount of $600 and, in addition thereto, could receive a loan through the PHEA in an amount approximating $800. She asked that her father contribute $100 per month toward her college education.

When asked what her college board scores were she could not remember and was somewhat unsure of her cumulative average in high school and of her class standing. The court requested that she provide it with that information.

This information was later supplied to the court by Karen's counsel and it appears to the court from the college board scores that Karen De Santis would have difficulty gaining admittance to most colleges, although the court, from its practical experience, realizes that the admission department of various colleges considers more than board scores. Her academic achievements at Farrell High School have been above average but certainly have not been such as would distinguish her aca-

demically. The information received by the court would indicate that she had a College Board Score of 740 and stood number 130 in a class of 240 in Farrell High School.

Karen's father, Frank De Santis, took the witness stand and testified that he works at Sharon Steel and that he makes $3.49 an hour and at the present time is working a 40-hour week for which he receives $139.60. Assuming that this type of employment continues, his gross wages would amount to $7,259.20 per year, which would result, according to the figures presented by him, to a net wage of $5,931.24 a year after State and Federal taxes were deducted. He presently has an order against him to support a child born of this marriage who is younger than Karen, and he pays $21 a week, or $1,092 per year for the support of that child. This further deduction would leave him $4,839.24.

His testimony further indicates that it cost him $75 a week to live, which amount includes an automobile payment of $25 per week, but other than this the amounts listed are the normal expenses of a working man.

On cross examination it appeared that during the year extending from August 29, 1970, to August 28, 1971, defendant made $10,366.99, but he testified that this amount represents a considerable over-time, which he does not feel he can count on this year.

An examination of the cases in Pennsylvania would indicate that there are no hard and fast rules which have been laid down by the court in regard to the requirement that a father provide his daughter with a college education or contribute money in order that she might obtain this type of education.

In Commonwealth ex rel. Yannacone v. Yannacone, 214 Pa. Superior Ct. 244, Commonwealth ex rel. Rice v. Rice, 206 Pa. Superior Ct. 393, and Commonwealth ex rel. Schearer v. Schearer, 208 Pa. Superior Ct. 196, the court establishes the general rule that a father is not required to support his daughter in college if this creates an undue hardship on his part and if he is not economically in a position to provide this support.

In Commonwealth ex rel. Ulmer v. Sommerville, 200 Pa. Superior Ct. 640, at page 644, the court states:

"The duty of a parent to provide a college education for a child is not as exacting a requirement as the duty to provide food, clothing and shelter for a child of tender years unable to support himself. It is a natural law that a parent should spare no personal sacrifice to feed and protect his offspring. Therefore, beyond the barest necessities, a father should be required to sacrifice personal comfort in order to provide the necessities of a child too young to support himself. The same exacting requirement should not be demanded of a father to provide a college education for a child able to support himself."

In the same case, the court sets down certain guidelines which should be considered in determining whether or not an order should be entered against defendant under these circumstances. These guidelines are:

1. Is the child willing and able to successfully pursue her course of studies?

2. Does the father have sufficient estate, earning capacity or income to enable him to pay the order without undue hardship?

3. Are there other relevant or material circumstances that must be considered?

Applying this test we must conclude that Karen De Santis is not entitled under the present circumstances to an order against her father. We feel that this court has an obligation not only to determine whether Karen is willing and able to pursue her college education, but also to determine whether her plan as proposed to the court is a practical one in light of all the circumstances. It is on this matter that we would first like to focus our attention.

We believe that it is questionable whether Karen De Santis is educationally qualified to go on to college and major in the field of psychology. Her college boards do not indicate that, nor does her class standing indicate that this field is open to her. Granted, many young people enter college with the aspiration of becoming a doctor or a lawyer or a psychologist and later learn these fields are not within their reach, but these same students switch their majors to other fields and complete their college course successfully. The problem that is of the most concern to this court is the fact that this young lady is asking this court to require her father to contribute money so that she may attend a school in Iowa which, at best, is little known and quite expensive. In the meantime, there are available to Karen De Santis in this immediate area numerous opportunities to achieve her desire for a college education at an amount which is considerably less than what she is presently contemplating. This is particularly true in view of the fact that she has little or no money available to her to pursue her academic career.

We would strongly suggest that she investigate the

possibilities of attending the Eldinboro Center located in Farrell, Pennsylvania, or that she explore the opportunities at Youngstown State University, which is located approximately 14 miles away, or that she consider the possibility of attending the University of Pittsburgh off-campus centers in Titusville or Bradford. Any of these schools would give her the opportunity of obtaining a low cost education, and in the event that she is highly successful in her field she would have the opportunity to enter the main campus with the assurance that she would be able to complete her college work. We are inclined to believe that if she would show the court that she had been accepted in a school of this type, then the court would certainly be more sympathetic to her cause and would reconsider her request for support from her father. We do not believe, however, under the present circumstances that her plan is either practical or a workable plan and that this court would be doing her father a considerable injustice to require him to put money into an educational plan which does not appear to this court to be workable. In addition to that, we feel that there is a need for Karen to sit down with guidance counsellors either in the Farrell school system or with other persons of this type who are available and discuss her college plans rather than selecting a school which is remote and unknown.

We also are of the opinion that there is some question of whether or not Karen is qualified to do college work. We believe that her College Board scores would indicate that she will encounter considerable difficulty in competing on the college level. We do not mean by this to indicate that this court suddenly is in a position where it can determine whether young people will succeed in college, because we are well aware of the fact that the success or failure in any-

thing depends to a considerable extent on the amount of effort expended by the person who seeks to achieve her goal. We merely point this out to corroborate our initial thought that this young lady should seek admittance to a local school where the cost of her education would be considerably less than the amount proposed by her and, in the event she finds that she has insufficient aptitude to continue, then neither she nor her mother nor her father would suffer financially to the extent that they might under the proposed circumstances.

We also are of the opinion that the desires of the father should be considered by this court. The mere fact that the parties have separated and divorced and the daughter is living with the mother should not create a situation different than it would had the parties not had an unhappy marriage and separated and divorced. The father should still have the right to express his opinion as to whether his child should receive a college education, and that opinion should carry considerable weight. This court must not substitute its opinion for the opinion of the natural father who knows the child far better than the court does and who has seen the child grow up and is able to evaluate what is best for her.

We finally conclude that Frank De Santis does not earn sufficient money to enable him to contribute very much toward his daughter's education. Mr. De-Santis is a mill worker who earns an average wage and were he and his family living together as a family unit he would be making sufficient funds to enjoy some of the luxuries of American life, but he certainly would not be considered to be above middle income. He has the right, as he approaches his later years, to not be required to deprive himself of some of the necessities in order that his daughter might

obtain a college education. There is a tendency in our modern society to believe that a college education is the solution to the future of all young people. This simply is not true, and this court believes, from what it has read, that possibly this philosophy is undergoing a radical change. There are many opportunities open to young people to succeed, not only financially but by obtaining the personal satisfaction of contributing to society without having a college degree.

We, therefore, conclude that the petition asking for an order against Frank De Santis must be dismissed at the present time, but we do not intend to completely close the door on the plans of Karen De Santis, who is an ambitious young girl whose feelings must also be considered. We would again consider her request for help from her father if she would propose a plan to us that is practicable and workable. This plan should include acceptance at a local college which would provide educational opportunities at a minimum expense. For example, if Karen could live at home with her mother rather than living in a dormitory, the difference in cost would be considerable. If the court receives such a plan, then it would be inclined to examine again the earnings of the father, together with his potential for possible additional earnings, and would consider making an order against him to pay some amount for his daughter's education. This assumes that the father is still making the same amount of money that he is at the present time.

If this proposal is not acceptable to Karen, then we are of the opinion that this court will not enter an order under the existing circumstances which call for her to enter an expensive school at a considerable distance from her home with no assurance that she can complete her college education or no assurance that

she has aptitude in the field that she now wishes to pursue.

## ORDER

And now, October 14, 1971, the petition of Elsie Jane De Santis seeking money from Frank De Santis for the education of their daughter, Karen De Santis, is refused, and exceptions are granted to the wife plaintiff from this order of court.